UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD N. CALSADA, JR., | Case No. 1:22-cv-00063-HBK |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY [1] |
| v. | |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, | |
| | (Doc. Nos. 13, 15) |
| Defendant. | |

Edward N. Calsada, Jr. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 13, 15-16). For the reasons stated, the Court orders this matter remanded for further administrative proceedings.

**I.    JURISDICTION**

Plaintiff protectively filed for disability insurance benefits on December 2, 2019, alleging

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1).  (Doc. No. 9).

an onset date of November 20, 2018.  (AR 153-59).  Benefits were denied initially (AR 56-66, 80-84), and upon reconsideration (AR 67-79, 90-95).  Plaintiff appeared before an Administrative Law Judge ("ALJ") on March 8, 2021.  (AR 31-55).  Plaintiff was represented by counsel, and testified at the hearing.  (*Id*.).  On April 14, 2021, the ALJ issued an unfavorable decision (AR 12-30), and on November 19, 2021 the Appeals Council denied review (AR 1-6).  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II.  BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 58 years old at the time of the hearing.  (*See* AR 153).  He graduated from high school.  (AR 35).  He lives with a roommate.  (AR 35-36).  Plaintiff has work history as an auto mechanic, kitchen manager cook, hotel maintenance worker, retail clerk, gas station convenience store manager, and warehouse worker.  (AR 36-38, 49-50).  Plaintiff testified that he stopped working because he could not stand on his left leg due to an ulcer on his ankle, and he is unable to work because of his back and leg pain.  (AR 36, 38-39).  He reported he alternates his feet up and down all day because of poor circulation in his legs.  (AR 42).  He can sit in a chair with his feet on the floor for 15 minutes before he has to put his feet up or stand up; he can walk for five minutes before his legs start to get tired and his back hurts; he does not stand in one place longer than it takes to shave, and he only shaves every couple of days; he does not walk around; and he has difficulty with stairs.  (AR 42, 45-46).  Plaintiff testified he uses a cane because of pain in his right leg and numbness in his right foot that has caused him to fall a couple of times.  (AR 44).  He has back pain every day rated at a constant eight out of ten with days where it has "gone to almost unbearable," he has trouble sleeping, and he has difficulty with focus and concentration.  (AR 46-48).

## III.  STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the

claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider

vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 20, 2018, the alleged onset date. (AR 17). At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus, chronic venous insufficiency, obesity, and lumbar disc bulge and facet arthropathy. (AR 17). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 18). The ALJ then found that Plaintiff has the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift 20 pounds occasionally and 10 pounds frequently; he can stand or walk for 4 hours out of an 8-hour workday; he can sit for 6 hours out of an 8-hour workday; he can never climb ladders, ropes, or scaffolds; he can never climb ramps or stairs; he can occasionally stoop, kneel, crouch, or crawl; and no heights or dangerous, moving machinery.

(AR 19).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 24). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: customer service representative, purchasing clerk, and maintenance scheduler. (AR 25-26). On that basis, the ALJ concluded that Plaintiff has not been

under a disability, as defined in the Social Security Act, from November 20, 2018, through the date of the decision.  (AR 26).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's subjective complaints;
2. Whether the ALJ properly considered the medical opinion evidence; and
3. Whether the ALJ erred at step five.

(Doc. No. 13 at 7-19).

## VII.   DISCUSSION

### A. Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that

the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 20). Plaintiff argues the ALJ discredited Plaintiff's statements without providing specific, clear, and convincing reasons. (Doc. No. 13 at 12-15). The Court agrees.

First, the ALJ found

> the degree of the claimant's subjective complaints is not comparable to the extent of treatment sought by the claimant. In fact, the claimant's treatment regimen was conservative and/or standard. The claimant did undergo surgery for his varicose veins, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgeries were generally successful in relieving the symptoms. As to the other impairments, no aggressive treatment was recommended for his impairments. The claimant has not undergone surgery or even standard treatment such as chiropractic treatment or epidural steroid injections for his back.

(AR 22). Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for rejection of Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029.

Here, the ALJ offers no specific evidence from the record indicating that Plaintiff failed to seek or comply with treatment; instead, the ALJ appears to support this conclusion with additional findings that Plaintiff's treatment regimen was conservative, surgeries for his varicose veins were "generally successful in relieving the symptoms," and aggressive treatment was not

1  recommended in treating his impairments.  (AR 22).  The effectiveness of treatment is a relevant
2  factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c),
3  416.929(c); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)
4  (conditions effectively controlled with medication are not disabling for purposes of determining
5  eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (9th
6  Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of
7  debilitating pain or other severe limitations).  Furthermore, evidence of "conservative treatment"
8  is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *Parra v.*
9  *Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

10  Plaintiff correctly notes that the ALJ's statement "puts Plaintiff in a double bind,
11  discounting Plaintiff's testimony for conservative treatment as well as non-conservative (surgical)
12  treatment because of the results of the treatment.  Moreover, the surgeries were not 'generally
13  successful' in resolving Plaintiff's symptoms." (Doc. No. 13 at 14).  Neither the ALJ nor
14  Defendant cites to any evidence that only conservative treatment was prescribed for Plaintiff, or
15  that he experienced sustained improvement of his back and leg pain even when the treatment was
16  arguably more aggressive. [2]  (AR 20-22).  The only arguable evidence of improvement cited by
17  the ALJ in support of this finding is a treatment note after Plaintiff's surgery for veinous leg
18  ligation and stripping with varicose vein excisions observing that Plaintiff was "healing well" and
19  his severe leg swelling was now easily controlled.  (AR 20, 280).  However, the ALJ's decision
20  acknowledges that subsequent diagnostic testing showed venous reflux in both lower extremities;
21  and, perhaps most remarkably, in light of these reasons given to discount Plaintiff's testimony,
22  that Plaintiff "failed conservative treatment for his right leg varicose veins" and proceeded to
23  undergo additional surgery that Plaintiff later reported did *not* improve his leg pain.  (AR 21, 286
24  (noting Plaintiff has been diligent about conservative management of his veinous insufficiency
25  but he "suffered complication" and decided to proceed with surgery), 292-93, 296-99, 300 (noting

---

[2] The ALJ specifically notes that Plaintiff's diabetes seemed adequately managed with medication, and Plaintiff does not appear to challenge this finding. (AR 20). Regardless, as discussed *supra*, the ALJ did not support her discounting of Plaintiff's claimed back and leg pain with specific, clear, and convincing reasons, and therefore the ALJ must reconsider all of Plaintiff's symptom claims on remand.

Plaintiff has been doing conservative management "without much benefit")). Subsequent treatment records cited by Plaintiff also observe that "caring for superficial veins is a never ending battle that really does not change the course of the problem, which is deep venous insufficiency," and a separate treatment note post-surgery "suspect[s]" that Plaintiff's leg pain may be related to an "underlying neur[o]-muscular issue including lumbar [sic] spine." (AR 292, 321).

Finally, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, 2018 WL 1567814, at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015)). Thus, an ALJ errs in rejecting subjective complaints on these grounds if he "failed to explain why [the treatment] is routine or conservative or what more aggressive treatment was available and appropriate for Plaintiff." *See Candice C. v Saul*, 2019 WL 5865610, at *4 (C.D. Cal. Nov. 8, 2019). Here, the ALJ attempts to support the rejection of Plaintiff's back pain symptoms by noting he has not undergone surgery "or even standard treatment such as chiropractic treatment or epidural steroid injections for his back." (AR 22). However, the ALJ also acknowledged that "no aggressive treatment was recommended for his impairments," nor does the Court discern evidence in the record of more aggressive treatment actually recommended by Plaintiff's treating physicians. (*Id.*). For all of these reasons, the Court finds the ALJ's conclusory finding that the "extent of treatment sought is not comparable to the degree of Plaintiff's subjective complaints," based on improvement with conservative treatment and lack of more aggressive treatment, is not supported by substantial evidence. Thus, this not a clear and convincing reason to reject Plaintiff's symptom claims.

Second, the ALJ found Plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR 23). Plaintiff argues this was not a clear and convincing reason to discount his symptom claims because his self-reported daily activities are consistent with his alleged limitations. (Doc. No. 18 at 15-16). The Court agrees. The ALJ may consider a claimant's activities that undermine

reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  However, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her [testimony] as to her overall disability.").

Here, in support of this finding, the ALJ generally cites to Plaintiff's reports in a January 2020 "exertion questionnaire" that he is able to drive for 45 minutes, walk up a flight of stairs in his house, and carry two bags of groceries at a time.  (AR 23, 200-202).  However, the ALJ did not consider Plaintiff's testimony and additional reports that he only climbs up four to five stairs at a time, it could take three to four minutes to climb 14 stairs depending on his back pain, he usually got rides and did not drive for long, and only left the house to go to the doctor and grocery shopping.  (AR 44, 46-47, 201).  The ALJ cited no evidence suggesting that the limited activities cited in the decision were performed by Plaintiff in a manner transferable to a work setting, particularly regarding Plaintiff's need to change positions regularly including laying down with his feet up, nor did the ALJ describe activities that contradict Plaintiff's reported symptom claims.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  Furthermore, in considering Plaintiff's symptom claims, the ALJ must specifically identify the statements he or she finds not to be credible, and the evidence that allegedly undermines those statements.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (noting the ALJ did not specifically identify any inconsistencies between the claimant's testimony and the record;

1   rather, "she simply stated her non-credibility conclusion and then summarized the medical
2   evidence supporting her RFC determination."). Here, the ALJ did not identify the specific
3   testimony that she found not to be credible, nor did she offer explanations for why the cited
4   evidence of Plaintiff's ability to perform basic activities of daily living for limited periods of time
5   undermines Plaintiff's symptom claims. For example, the ALJ did not explain how Plaintiff's
6   reports that he could carry two grocery bags from the car to the kitchen once a month conflicted
7   with any of his testimony, particularly in light of Plaintiff's treating physician's opinion that he
8   could occasionally lift 20 pounds. (AR 201, 455). Thus, the ALJ's finding that Plaintiff's daily
9   activities were inconsistent with his claimed limitations was not a clear and convincing reason,
10  supported by substantial evidence, to discount his symptom claims.
11         Third, the ALJ found Plaintiff's symptom claims were inconsistent with the objective
12  medical evidence. (AR 22). "Specifically, his physical examinations did not show findings to the
13  extent that would warrant the finding of greater limitations in the [RFC]. As detailed [in the
14  decision], physical examinations were generally normal or only showed mild to moderate
15  findings." (AR 22). In support of this finding, as to his back and leg pain, the ALJ cited
16  objective evidence in the record including vascular diagnostic imaging tests showing reflux of the
17  bilateral lower extremities; a 2020 x-ray showing no acute osseous abnormality and retrolisthesis
18  of L2 on L3 with associated L2-L3 degenerative change; a 2020 EMG showing chronic right
19  L4/L5 and chronic left L5 lumbosacral radiculopathy; a 2020 MRI showing right paracentral disc
20  extrusion with associated right ventral epidural sequestration along the dorsal aspect of the L5
21  vertebral body and no spinal canal stenosis; and examination findings of decreased range of
22  motion with pain, tenderness to palpation of the right lower ribs, decreased sensation in the left
23  L4 and L5 dermatones, mildly decreased muscle strength, antalgic gait, and no obvious
24  neurological deficit in either lower extremity. (AR 20-22 (citing AR 278-80, 307, 365, 381-84,
25  386-87, 426 429-31 (noting he ambulated with a cane)).
26         Plaintiff argues the ALJ does not specify which of the cited objective findings are
27  "normal" or "mild to moderate," and that the record does not support the ALJ's conclusion.
28  (Doc. No. 13 at 14). For example, Plaintiff underwent two surgeries based on imaging results of

11

deep venous reflux and varicosities, and 2021 treatment notes indicate Plaintiff was referred to a spinal specialist for further treatment regarding his L4-L5 foraminal narrowing due to persistent radicular symptoms. (*See* AR 321, 383-84, 402). Moreover, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective evidence, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits *solely* because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added))); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). As discussed above, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims were not supported by substantial evidence. Thus, because lack of corroboration by the objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.[3]

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims particularly as to his alleged back and leg pain. On remand, the ALJ must reconsider Plaintiff's symptom claims.

**B. Medical Opinions**

Plaintiff additionally challenges the ALJ's findings regarding "temporary disability paperwork" filled out by Mikel Meyer, D.O., the medical findings of the state agency medical consultants, and the medical opinion of treating physician John Krpan, M.D. (Doc. No. 13 at 7-12). Because the ALJ's consideration of the medical opinion evidence is at least partially dependent on a proper evaluation of Plaintiff's symptom claims, the Court declines to address these challenges in detail here.

The Court does briefly note that the Ninth Circuit has held that in considering medical opinion evidence, the new regulatory framework displaces the longstanding case law requiring an

---

[3] The ALJ also "notes" that "despite the claimant's assertion that he sometimes needs to use a cane, there is no medical evidence supporting such a claim, and the medial opinions of record do not support such a claim." (AR 22). To the extent this was offered by the ALJ as an additional reason to discount Plaintiff's symptom claims, it should be reconsidered on remand along with all of Plaintiff's subjective complaints for all of the reasons discussed *supra*.

12

ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id*. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Here, in March 2021, Dr. Krpan opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for two hours out of an eight-hour workday; sit and stand for 10 minutes at a time before changing positions; walk around every 10 minutes for 5 minute at a time; he would need to shift positions at will and would need to lie down at unpredictable intervals during a work shift "at least" every hour; he should avoid even moderate exposure to extreme cold, extreme heat, and hazards; he could never climb ladders, crouch or stoop; and he would miss more than four days of work per month. (AR 455-57). The ALJ found Dr. Krpan's opinion unpersuasive for several reasons. (AR 23).

As to supportability, the ALJ found "there were insufficient references to medically acceptable objective clinical or diagnostic findings that would support the assessment. Dr. Krpan's notes show a waxing and waning symptomology with the most severe complaints coming from a more recent visit." In addition, "a supportable explanation was not provided because the assessments were based on a summary of the claimant's subjective complaints, diagnoses and treatment without documenting the significant positive objective findings that would support the assessment." (AR 23-24). First, as discussed *supra*, the ALJ's rejection of Plaintiff's symptom claims was not supported by clear and convincing reasons; thus, to the extent the ALJ found Dr. Krpan's opinion less persuasive based on his alleged over-reliance on Plaintiff's properly discounted symptom claims, this finding is not supported by substantial evidence. Second, when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they,

rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. In addition, the Ninth Circuit recently clarified that under the new regulations for considering medical evidence, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted).

Here, Dr. Krpan explicitly stated the assessed limitations were supported by medical findings including s "L4-L5 disc protrusion with mass effect on L4-L5 nerve root"; his examination included clinical findings of "decreased muscle strength dorsi flexion"; and he characterized the nature of Plaintiff's pain as low back pain, right greater than left, with bilateral lower extremity radicular pain, right greater than left, in L4-L5 distribution. (AR 455-57). Thus, "it is unclear what more evidence the ALJ could expect to support Dr. Krpan's assessment." (Doc. No. 13 at 11). Similarly, despite relying on a "waxing and waning" symptomology in Dr. Krpan's treatment notes "with the most severe complaints coming from the more recent visit," the ALJ only provides a general cite to all of Dr. Krpan's treatment notes in support of this finding. Because the ALJ failed to explain how any of the specific limitations assessed by Dr. Krpan are unsupported by the objective findings referenced in the opinion or his own treatment notes, the ALJ's supportability finding is not supported by substantial evidence..

Second, as to consistency, the ALJ generally found "the objective evidence, including the claimant's use of only standard treatment, does not support the assessments, particularly the standing and walking limitations." (AR 24). As discussed *supra*, the ALJ's general reference to

"only standard treatment" is not supported by the record especially in light of Plaintiff's lower extremity surgeries and referral to a spine specialist for his back and leg pain.  Moreover, the ALJ fails to cite to any specific "objective evidence" in the record to support this finding, nor does she explain how the standing and walking limitations assessed by Dr. Krpan are inconsistent with the "objective medical evidence."  Thus, the ALJ's finding that Dr. Krpan's opinion was not persuasive because of an alleged inconsistency with the record is not supported by substantial evidence.

Based on the foregoing, and particularly in light of the of the need to reconsider Plaintiff's symptom claims on remand, the ALJ must reevaluate Dr. Krpan's opinion, along with all relevant medical opinion evidence, on remand.

**C. Step Five**

Plaintiff additionally argues that the ALJ failed to meet the Commissioner's burden of providing significant numbers at step five by improperly relying on "unclear" vocational expert testimony that Plaintiff has the ability to perform jobs with skills that transferred from his past skilled and semi-skilled work  (Doc. No. 13 at 16-19).  Because the analysis at step five is dependent on the ALJ's reevaluation of Plaintiff's symptom claims and the medical opinion evidence, the Court declines to address this challenge here.  On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims and the medical opinion evidence, and conduct a new sequential analysis considering all of the evidence in the record, including a reassessment of the RFC and step five finding if necessary.

**D. Remedy**

Plaintiff argues the Court should remand the case with instructions to award benefits. (Doc. No. 13 at 19).  The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs*., 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d

1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered Plaintiff's symptom claims and medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate Plaintiff's symptom claims, as well as all relevant medical evidence, including medical opinions. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 13) is GRANTED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 15) is DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
4. An application for attorney fees may be filed by separate motion within thirty (30) days.

5. The Clerk shall enter judgment in favor of Plaintiff, terminate any motions and deadlines, and close this case.

Dated:     September 18, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

17